IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERT J. AKIN,**
   **Plaintiff**

  v.

**YORK COUNTY PRISON, and**
**TEAMSTERS LOCAL UNION 776,**

   **Defendants**

CASE NO. 1:09-CV-02484

## M E M O R A N D U M

Plaintiff Robert J. Akin, a former corrections officer with Defendant York County Prison, brought this civil rights action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and the Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Cons. Stat. Ann. § 951 *et seq.* In his Amended Complaint, Plaintiff asserts that the York County Prison violated the ADA and the PHRA by refusing to reassign him to a light duty job, and thus failed to provide him with a reasonable accommodation for his disability of degenerative disc disease, and instead terminated his employment. Plaintiff further asserts that York County Prison violated the ADEA and the PHRA when it refused to assign him to a light duty job while at the same time assigning light duty jobs to younger employees.

Plaintiff also asserts that Defendant Teamsters Local Union 776, ("Union"), violated the ADA, the ADEA, and the PHRA by refusing to pursue light duty employment or an alternative position for him despite having successfully pursued light duty employment for non-disabled and younger corrections officers.

Before the court is the Union's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. (Doc. 15.) The motion is ripe for disposition.

I.      **Background**
        A.      **Facts**

The following facts are taken from Plaintiff's complaint, the exhibits attached thereto, or those documents mentioned in Plaintiff's complaint, the authenticity of which is not disputed. Plaintiff Robert J. Akin is a 60-year old male with degenerative disc disease who was formerly employed as a corrections officer for Defendant York County Prison ("Prison"). Akin worked as a corrections officer at the Prison from 1999 until February 29, 2008, when his employment was terminated. While employed at the Prison, Akin was a member of the Union and was covered by a collective bargaining agreement.

In or about 2004, Akin was diagnosed with degenerative disc disease. Prior to June 2007, Akin was a corrections officer in good standing and worked many hours of overtime. However, on or about June 6, 2007, Akin underwent an operation for his back due to a non-employment related injury and suffered post-operation complications from a staph and strep infection in the wound, which prolonged his recovery and limited his ability to bend, twist, and lift. After this surgery, Akin forwarded his doctor's notes and records to Defendants and made them continually aware of his limitations and his recovery.

On November 13, 2007, Akin was released by his doctor for light-duty employment where he would not be required to bend, twist, or lift. At all times after

November 13, 2007, Akin could not perform the functions of his prior position, but was able to work in other positions. Akin informed the Prison of his limitations and sought placement on floor control, which is the computer operation of the doors in the prison, answering phones, operating computers for the cell and pod doors, and roof positions. The Prison denied him placement in any of these positions on the basis that there were no light duty positions at the Prison.

Akin was cleared to return to work against medical advice effective April 30, 2008. (Doc. 13, Amend. Compl. ¶ 25.) However, on February 19, 2008, Mary Sabol, the chief deputy warden of the Prison, mailed a letter to Akin terminating his employment effective February 29, 2008. (*See* Feb. 19, 2008 Ltr. from Sabol to Akin, Doc. 12-2 at 42.) In this letter, which was attached to Akin's Amended Complaint, Sabol details the history of Akin's medical leave, and then states the following:

> While we sympathize with your condition, I am sure you can understand that we cannot hold your job open indefinitely while you attempt to recover from your injury. Moreover, we have received information from you that you will be off until at least April 2008. In light of the above, the County has determined that it is necessary to terminate your employment effective as of February 29, 2008.

(*Id.*) Later, at the request of the Union, it was clarified by Sabol that Akin's termination was due to his "fitness for duty," and that Akin was "an employee in good standing," who should feel free to reapply once his circumstances changed. (Mar. 6, 2008 Ltr. from Robert Nace to Mark Andreozzi, Doc. 15-2 at 53 of 59.)

In February 2008, the Prison hired twelve new corrections officers all of whom were younger than Akin and none of whom had limitations in their ability to work. Akin believes that all of these individuals were less than forty years of age.

3

Akin also asserts that the Prison has accommodated younger corrections officers with light duty assignments in the past.

On March 28, 2008—one month after Akin's employment was terminated—Akin's Union representative met with Sabol to discuss the possibility of reinstatement. After this meeting, the Union representative phoned Akin and informed him that the Prison had the prerogative to terminate his employment and that Akin's time for redress had expired. Akin avers that "pursuant to the collective bargaining agreement, [the Union] had [in the past] successfully pursued light duty employment for non-disabled and younger Corrections Officers at [the Prison]." (Doc. 13, Amend. Compl. ¶ 31.)

### B. Procedural History

On or about April 15, 2008, Akin dual-filed a complaint alleging discrimination based on disability and age with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") against the Prison. (*See* Doc. 12-2 at 3-9.) On July 30, 2008, Akin dual filed a complaint alleging discrimination based on disability and age with the PHRC and the EEOC against the Union.[1] Both of these complaints were administratively exhausted and Akin was issued right to sue letters.

Akin filed a complaint with this court on December 16, 2009. (Doc. 1.) In his original complaint, Akin sued not only the Prison and the Union, but he also sued Mary Sabol, the chief deputy warden, and Mark Andreozzi a Union representative. On March 12, 2010, the Union and Andreozzi filed a motion to

---

[1] The Amended Complaint states that the PHRC/EEOC dual-filing against the Union was filed on July 30, 2009. This is clearly a clerical error as the date next to the signature on the filing is July 30, 2008.

4

dismiss the complaint. (Doc. 3.) On March 15, Mary Sabol filed a motion to dismiss the complaint, and the Prison filed an Answer. (Docs. 6, 8.) On April 2, 2010, Akin filed a motion for leave to file an amended complaint, which would dismiss the claims against Defendants Sabol and Andreozzi. (Doc. 10.) That motion was granted on April 5, 2010, and an Amended Complaint was filed that day. (*See* Doc. 12.) Later that same day, Plaintiff filed a *corrected* Amended Complaint that deleted some of the language pertaining to Defendant Andreozzi. (*See* Doc. 13.)

Akin's corrected Amended Complaint asserts two counts against the Prison and the Union. First, Akin asserts that the Prison violated the ADA and the PHRA by refusing to grant him a reasonable accommodation for his disability or an alternative position due to his disability of degenerative disc disease. (Doc. 13, Amend. Compl. ¶ 37.) Akin contends that the Union violated the ADA and the PHRA by "refusing to pursue light duty employment or an alternative position . . . to reasonably accommodate him due to his disability. . . ." (*Id.* ¶ 38.)

Second, Akin asserts that the Prison violated the ADEA and the PHRA when it refused to grant him a reasonable accommodation or alternative position due to his age in favor of younger employees. Akin contends that the Union violated the ADEA and the PHRA by refusing to pursue light duty employment or a reasonable accommodation to accommodate him because of his age. (*Id.* ¶ 42.)

The Prison filed an Answer to Akin's corrected Amended Complaint on April 16, 2010. (Doc. 14.) The Union filed a motion to dismiss Akin's corrected Amended Complaint on April 19, 2010. (Doc. 15.) On April 27, 2010, the Union filed its brief in support of its motion to dismiss. (Doc. 16.) Akin filed his brief in

opposition to this motion on May 11, 2010. (Doc. 17.) On May 21, 2010, the Union filed its reply brief. (Doc. 22.) The motion is ripe for disposition.

**II.        Legal Standard**

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998

F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**III.** **Discussion**

The issue currently before the court is whether Akin has set forth sufficient facts, which if true, demonstrate that the Union is liable under the ADA and the ADEA based on its failure to pursue light duty employment for Akin in lieu of termination.[2]

### A. ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "covered entity," includes a labor organization such as the Union. When a labor organization is being sued in its capacity as a representative of the employee as opposed to those situations where it is the employer, the ADA prohibits the labor organization from refusing to bring a grievance because of an employee's protected status. *See* EEOC Compliance Manual § 605, Appx. L.

Here, Akin alleges that the Union violated the ADA when it "unlawfully refused to pursue light duty employment or an alternative position for [Akin] to reasonably accommodate him due to his disability of degenerative disc disease." (Doc. 13, Amend. Compl. 38.) Thus, Akin's claim is that the Union discriminated against him in its failure to pursue a grievance because he was disabled.

To establish a prima facie case under the ADA, a plaintiff must show that he is a (1) a qualified individual with a disability, and that he (2) has suffered an adverse action because of that disability. *See Eshelman v. Agere Sys., Inc.* 554 F.3d 426, 433 (3d Cir. 2009); *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d

---

[2]The PHRA parallels the ADA and the ADEA for all purposes significant to this case.

Cir. 2006). Once a plaintiff establishes a prima facie case, the burden shifts to the labor organization to articulate a legitimate, non-discriminatory reason for the adverse action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). The plaintiff then bears the burden of establishing that this proffered reason is a pretext for discrimination. *Id.*

The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C § 12111(8). Even assuming that Akin has successfully pled that he is an individual with a disability, the Amended Complaint is deficient because the allegations, taken as true, do not establish that he could have performed the essential functions of the employment position that he held or the one(s) that he desired.

In the Amended Complaint, Akin states that because of his degenerative disc disease he "could not fully perform all functions of his prior position," but that he was capable of working in another, light-duty position. (Doc. 13, Amend. Compl. ¶ 21.) In essence, Akin asserts that in order to accommodate his disability he must be permanently reassigned to a light duty position, and that by not requesting this reassignment the Union violated the ADA.

In a failure-to-transfer case, "the plaintiff bears the burden of demonstrating: (1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation." *Shapiro v. Twp. of Lakewood*, 292 F.3d 356, 360 (3d Cir. 2002) (*quoting Donahue v.*

*Consol. Rail Corp.,* 224 F.3d 226, 230 (3d Cir. 2000)). Akin has not pled any facts sufficient to plausibly sustain a failure to transfer claim against the Union.

For example, Akin does not allege that a vacant light-duty job existed at the time he made his request to the Prison such that the Union could have advocated for Akin to be placed in that position. Akin avers no facts suggesting that any light duty position that may have existed was at or below the level of his then-current job. Finally, Akin fails to aver any facts which plausibly suggest that he would be able to perform the essential duties of any new position with or without a reasonable accommodation. On these bases alone, Akin has failed to state a claim upon which relief can be granted. *See Iqbal*, 129 S. Ct. at 1950, ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a) (alterations in original).)

Tellingly, those factual allegations that do exist do not point to any wrongdoing by the Union. The Amended Complaint contains no specific allegation actions (or inactions) on the part of the Union until March 28, 2008. (*See id.* ¶¶ 29-30.) Akin avers that on that date a Union representative met with the chief deputy warden at the Prison to discuss Akin's termination. After this meeting, the Union representative told Akin that the Prison has the prerogative to terminate his employment and that Akin's time for redress had expired. (*Id.*) Akin then alleges that pursuant to the collective bargaining agreement, the Union had successfully pursued light duty employment for non-disabled and younger corrections officers. (*Id.* ¶ 31.) This statement is a *non sequitur*. There is nothing in the paragraphs

previous to this averment suggesting that Akin ever requested that the Union pursue reassignment to a different, light-duty position.

The grievance filed by Akin concerned his termination from a corrections officer position, and does not mention that he sought a transfer from that position to another position within the prison.[3] (*See* Mar. 4, 2008 Grievance, Doc. 15-2 at 49 of 59.) In his brief in opposition, Akin contends that the Union should have known that he was seeking any work that was available because he was desperate for work. This is not self evident from Akin's grievance. Even if it were, Akin does not make these allegations in his amended complaint.

Put simply, Akin's amended complaint alleges insufficient facts showing that he is entitled to relief under the ADA for the Union's failure to pursue a light duty position in lieu of termination. While ordinarily, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient, *see, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007), the court may grant dismissal without leave to amend if doing so would be inequitable or futile. *Id.* at 251.

Here, Akin has not requested leave to file a second amended complaint; instead, he defended the Union's motion to dismiss on its merits. This is

---

[3]Although ordinarily the court would not consider documents outside of the pleadings in resolving a motion to dismiss, Akin's amended complaint impliedly relies on the grievance that he filed after his termination because this document put in place all of the meetings between Akin's Union representatives and the Prison. Because the court is permitted to consider documents that, though not attached to the complaint, are referenced therein and attached to a defendant's motion to dismiss, the court finds it proper to consider the content of Akin's grievance without converting the Union's motion to a motion for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (stating that the court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]").

in contrast to his response to the Union's motion to dismiss his original complaint. There, rather than contest the allegations he chose to request leave to amend, which was granted by the court, and filed his Amended Complaint. However, Akin chose to only selectively address the deficiencies raised by the Union. Rather than substantively amend his complaint to add additional factual allegations showing his entitlement to relief under the ADA, Akin made no changes to the allegations against the Union despite the fact that in its' motion to dismiss Akin's original complaint, the Union made identical arguments concerning the deficiencies in Akin's pleading as it now makes in its' motion to dismiss his amended complaint. Akin was on notice of the deficiencies in his pleading, but failed to make any corrections. Given this history, and given that Akin is proceeding with the benefit of counsel rather than *pro se*, the court finds that any further opportunity to amend the complaint to reassert ADA claims against the Union would either be futile or inequitable. Thus, Akin's ADA claim against the Union will be dismissed without leave to amend.

### B. ADEA

Section 4(c)(1) and (2) of the ADEA prohibits labor organizations like the Union from discriminating against their members on the basis of age in the conduct of union business. 29 U.S.C. § 623(c)(1)-(2). To state a prima facie case of age discrimination, a plaintiff must demonstrate that he is (1) forty years of age or older; (2) that the defendant took an adverse action against him; (3) that the plaintiff was qualified for the position in question; and (4) that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference

of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (citations omitted).[4]

In the context of this case, Akin claims that he is sixty years old, and that the Union violated the ADEA in its failure to request a light-duty position in lieu of termination despite the fact that it had successfully pursued light duty positions for younger corrections officers. This is the extent of the facts pled by Akin, and they are insufficient as a matter of law.

First, it is questionable whether Akin sufficiently pled that he suffered adverse action. While he assumes that the Union's failure to pursue light duty employment constitutes adverse action, there are no facts from which the court can reach the conclusion that this assertion is plausible. The collective bargaining agreement in place at the time of Akin's termination does not contain a contractual basis for light duty accommodations for employees who suffer non-work related injuries or health conditions.[5] (*See* Agreement between Teamsters Local 776 and

---

[4] In *Smith*, the Third Circuit reaffirmed that the familiar *McDonnell Douglas* burden shifting framework applies in ADEA cases despite the Supreme Court's skepticism expressed in *Gross v. FBL Fin. Services*, ___ U.S. ___, 129 S. Ct. 2343 (2009). In *Gross*, the Supreme Court decided that "but for" causation or causation in fact is the standard applicable to ADEA cases, and expressed doubt about any burden shifting under the ADEA. The Third Circuit in *Smith* construed *Gross* narrowly to hold only that it is improper to shift the burden of persuasion to the defendant in an age discrimination case. It then found that since *McDonnell Douglas*, at least as fashioned in the Third Circuit, keeps the ultimate burden constantly on the plaintiff that the standard still applied to ADEA claims. Thus, in the context of an ADEA claim, once the plaintiff has met his prima facie case, the defendant must simply identify a legitimate non-discriminatory reason for the adverse employment action. *Smith*, 589 F.3d at 690. Once the defendant does so, the plaintiff must then demonstrate that this reason was a mere pretext for age discrimination. *Id.* Because we are at the pleading stage, the court is only concerned with whether Akin has pled sufficient facts to meet his prima facie burden and the court need not address the other prongs of the test.

[5] Like Plaintiff's grievance, the collective bargaining agreement was not attached to Akin's amended complaint but was referenced therein, was attached to the Union's motion to dismiss, and is integral to the resolution of Akin's case. Furthermore, there is no dispute about its authenticity. Thus,
(continued...)

13

York County Prison, eff. Jan. 1, 2008 to Dec. 31, 2012, Doc. 15-2 at 6-59.) Thus, it is questionable whether Akin can establish that the Union's failure to request this accommodation constituted adverse employment action.

Second, even assuming that the Union's failure to pursue a light duty position constituted adverse action, Akin has failed to plead facts sufficient to create the inference that the Union's action was motivated by discriminatory animus. Although Akin generally averred that the Union had successfully pursued light duty employment for "younger Corrections Officers at York County Prison," (Doc. 13, Amend. Compl. ¶ 31), he has failed to plead that any of his fellow union members were similarly situated. As a result, he failed to sufficiently plead that he received differential treatment, and, thus, failed to assert facts giving rise to an inference of discriminatory animus. *See Martinez v. Int'l Bhd. of Elec. Workers-IBEW Local Union No. 98*, 352 F. App'x 737, 741 (3d Cir. 2009) (concluding that where a plaintiff fails to demonstrate that his fellow union members were similarly situated in all relevant respects that he fails to establish that the circumstances of the union's decision not to pursue a grievance suggested discrimination) (*citing Kline v. Kansas City, Mo., Fire Dept.*, 175 F.3d 660, 670-71 (8th Cir 1999) ("similarly situated" means similar "in all relevant respects"); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (same)).

Accordingly, the court concludes that Akin has failed to plead facts that plausibly assert a violation of the ADEA by the Union. Akin was put on notice of

---

⁵(...continued)
the court can consider this document without converting the motion to one for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (stating that the court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]").

the deficiencies of his ADEA claims through the Union's motion to dismiss those claims in his original complaint. Like his ADA claim, rather than substantively amend his ADEA claim by adding facts which would plausibly support his claim under existing law, Akin chose to file an amended complaint that was substantially identical in its allegations of wrongdoing by the Union. Given that Akin has already had an opportunity to amend his pleading, and chose not to make substantive alterations, the court concludes that it would be either futile or inequitable to allow him to further amend his ADEA claim against the Union. Thus, Akin's ADEA claim against the Union will be dismissed without leave to amend.

### C. **PHRA**

Plaintiff brought his disability and age discrimination claims under the PHRA as well as the ADA and the ADEA. Liability under the PHRA's age and disability discrimination provisions is analogous in all relevant respects to liability under the ADA and the ADEA, and the statutes are interpreted coextensively. *See Fasold v. Justice*, 409 F.3d 178, 183-84 (3d Cir. 2005) (ADEA and PHRA analogous); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (ADA coextensive with PHRA). Accordingly, the court could dismiss Akin's PHRA claims for the same reasons that it will dismiss his federal claims.

However, since the court will dismiss Akin's federal claims based on his failure to plead sufficient facts to plausibly assert a violation of federal law against the Union—as opposed to a decision based on a weighing of the evidence—the court will, out of respect and comity for the differences between state and federal pleading, simply decline to exercise its supplemental jurisdiction rather than dismiss the state law claims in their entirety. *See Borough of West Mifflin v.*

*Lancaster*, 45 F.3d 780, 788 (3d Cir.1995) (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966)) (stating that a federal court should avoid needless decisions of state law both as a matter of comity and to promote justice between the parties, and that if the federal claims are dismissed prior to trial, even though not insubstantial in a jurisdictional sense, the non-federal claims should be likewise dismissed).

### D. Sanctions

In its motion to dismiss, the Union suggests that sanctions against Plaintiff and his counsel are appropriate under Rule 11 of the Federal Rules of Civil Procedure and Local Rule 83.3.1. This request is based on the Union's belief that the claims brought by Akin were made in effort to "harass and intimidate the Union." (Doc. 16, Br. in Supp. of Mot. to Dismiss at 13.) Specifically, the Union points to a letter that it received upon the filing of the complaint with the Pennsylvania Human Relations Commission. That letter, addressed to its business agent from Akin's counsel stated, in relevant part:

> Please be advised that this office has been retained by Robert Akin in connection with his employment status and representation by the York County Prison where he served as a CO until June, 2007.
>
> I am advising the Union at this time that I have requested that the Pennsylvania Human Relations Commission amend the current charge to include the Union based upon the manner in which Mr. Akin's termination was handled through the grievance procedure.
>
> Frankly, it is my hope that the Local Union can creative [sic] use its status as an additional charged party to encourage the County to appropriately settle or resolve this matter.

(Doc. 15-2 at 59 of 59.)

16

The Union contends that this letter demonstrates that Akin brought claims against it solely for the purpose of leveraging settlement, and that they were otherwise frivolous and baseless. For his part, counsel for Akin states in his brief in opposition to the Union's motion to dismiss that he chose to include the Union "as a strategic tactic against York Prison," and that his claims against the Union were not frivolous or brought in bad faith. (Doc, 17, Br. in Opp'n to Mot. to Dismiss at 13.)

Based on the court's review of the case, the court does not believe that sanctions are warranted. While Akin's claims against that Union ultimately failed, the court takes Plaintiff's counsel's assertions of good faith at face value and does not attribute ill motive to the fact that he included these claims in this lawsuit. Accordingly, the court will deny the Union's request for sanctions.

**IV.** **Conclusion**

In accordance with the foregoing, the court will grant Teamsters Local Union 776's motion to dismiss Plaintiff's ADA and ADEA claims, and will not grant Plaintiff further leave to amend those claims. The court will decline supplemental jurisdiction over Plaintiff's state law claims, and will deny Teamsters Local Union 776's request for sanctions. The court will issue an appropriate order.

                                               s/Sylvia H. Rambo
                                               United States District Judge

Dated: June 8, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ROBERT J. AKIN,**

    **Plaintiff**

    v.

**YORK COUNTY PRISON, and
TEAMSTERS LOCAL UNION 776,**

    **Defendants**

**CASE NO. 1:09-CV-02484**

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant Teamsters Local Union 776's motion to dismiss Plaintiff's Amended Complaint (Doc. 15) is **GRANTED**. Plaintiff's federal claims against Teamsters Local Union 776 are dismissed with prejudice. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims against Teamsters Local Union 776.

**IT IS FURTHER ORDERED THAT** Teamsters Local Union 776's request for sanctions against Plaintiff is **DENIED**.

                                                    s/Sylvia H. Rambo
                                                    United States District Judge

Dated: June 8, 2010.